IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK 20-41661 |
| | ) | |
| JEFFREY S. WESTERBY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | _____ |
| | ) | |
| SCOTT ROBERT PAULSEN, | ) | Adv. Pro. 21-4010 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY S. WESTERBY, | ) | |
| | ) | |
| Defendant. | ) | |

**Order**

This matter came before the court for trial on November 30, 2021, on the plaintiff's complaint objecting to dischargeability. The plaintiff, Scott Paulsen, appeared with his attorney Galen E. Stehlik. The debtor and defendant, Jeffrey Westerby, appeared with his attorney John A. Lentz.

The plaintiff objected to dischargeability based upon false pretenses, false representation, or actual fraud under 11 U.S.C. § 523(a)(2)(A). The evidence established the defendant's corporation breached a consignment agreement to sell the plaintiff's property. Because the plaintiff did not establish anything more than a breach of contract, the debt is not excepted from discharge.

*Findings of Fact*

The plaintiff consigned for sale a boat and trailer to the defendant's corporation, Westerby Enterprises, Inc. d/b/a The Boat Dock, in July 2017. The terms of sale were memorialized on a single carbonless paper form titled Marine Repair/Service Order. (Doc. #23). The form states, as to the asking sale price, "We will start @ $6,950". The plaintiff kept one of the carbonless copies, which he presented at trial for inspection. When the form was signed, the defendant orally agreed to consult with the plaintiff before he lowered the asking price. For its work, The Boat Dock was entitled to a 20% commission.

1

Along with the carbonless paper form, the plaintiff signed the title to the boat as seller and delivered the title to the defendant. The plaintiff did not enter a sale date or a buyer's name. The plaintiff testified the defendant suggested the plaintiff sign the title over. The defendant agreed to hold the title and fill in the sale date and buyer's name later to expedite the process. The defendant testified customers did not always turn over a signed title when asked.

The boat sold in October 2017. The defendant did not immediately inform the plaintiff. The plaintiff noticed the boat was no longer displayed and contacted the defendant. The defendant informed the plaintiff the boat sold "for top dollar." The plaintiff assumed the boat and trailer sold for $6,950. The defendant did not pay the plaintiff immediately because the buyer wanted optional equipment added to the boat and the buyer had not yet paid.

The plaintiff received a check for $4,000 on November 30, 2017. Anticipating a check for $5,560 after netting the 20% commission, the plaintiff inquired. The defendant told the plaintiff the boat and trailer sold for $5,000. The plaintiff demanded proof of the sale price, including state sales tax forms. The defendant did not comply. Instead, the defendant gave the plaintiff a copy of the Marine Repair/Service Order containing additional language "NADA Retail Low $3,255 High $4,100," "Lowered Price to $5,900 September 10, 2017," "Sold for $5,000 Consign Fee $1,000." (Doc. #17; Doc. #21).

Not satisfied with the response, the plaintiff requested assistance from a Nebraska "licensing board." He waited eight months for a response. The licensing board refused to get involved. While he waited for the response, the plaintiff did not deposit the $4,000 check. He believed if he cashed the check, he would be admitting the amount was accurate.

After the licensing board refused to act, the plaintiff deposited the check. The check bounced because the account was closed. The plaintiff obtained a replacement check from employees of The Boat Dock on September 17, 2018. The second check bounced for nonsufficient funds. The defendant offered to pay the plaintiff $10.00 per month on the debt. The plaintiff declined the offer. The defendant suggested the plaintiff speak with an attorney. The plaintiff did and filed a lawsuit in state court. The defendant, personally, and on behalf of his corporation, confessed judgment in the amount of $5,560 plus court costs. (Doc. #29). A copy of the state court complaint was not offered into evidence. The defendant asserts he did not confess to a judgment on account of fraud. The plaintiff did not contradict the defendant's testimony.

Through the state court litigation, the plaintiff obtained the purchase agreement between The Boat Dock and the buyer. (Doc. #28). He also obtained the Nebraska Sales and Use Tax Statements. (Doc. #24; Doc. #25). The purchase agreement states

the boat sold for $3,500, the motor for $1,050.96, and the trailer for $1,200, for a total of $5,750.96. The agreement also reflects the buyer bought $2,522.47 in optional equipment. The Nebraska Sales Tax and Use Statements state the boat sold for $4,550 and the trailer for $1,200 for a total of $5,750. The defendant testified the boat and trailer sold for $5,000 total, not $5,750. The Boat Dock charged $750 to install the additional equipment. A staff member completed the purchase agreement and tax statements. The defendant would have completed them differently.

The plaintiff asserts the defendant lowered the asking price without consulting the plaintiff. The defendant asserts he was motivated to obtain the highest price because a higher price meant a higher commission. The defendant asserts the plaintiff agreed to lower the price to $5,900 and this lower price was displayed on the boat when the plaintiff saw it. As to the final price, the defendant admits the plaintiff did not agree to lower the price to $5,000. The defendant believed he was authorized to sell the boat and trailer for $5,000. The plaintiff purchased a new boat and told the defendant the plaintiff wanted the old boat "to be gone".

The plaintiff asserts the defendant altered their consignment agreement with the handwritten additions to the top sheet of the carbonless paper form. The defendant agreed the actual written agreement did not include the additional language. The additions were his personal notes, including a record of his conversation with the plaintiff when the plaintiff agreed to lower the price to $5,900.

The defendant testified the first check had sufficient funds when it was written and for "quite a while" thereafter because he had the proceeds from the sale. The Boat Dock subsequently ran out of money despite the defendant's best efforts. The defendant never received a distribution or paycheck from the business. He did not use corporate funds for personal expenses. He used funds from his primary job to keep the business open. He filed for bankruptcy protection because he personally guaranteed the corporate debt. Bankruptcy was a last resort.

### Conclusions of Law

The Bankruptcy Code is designed to give honest but unfortunate debtors a fresh start. *See McDermott v. Petersen (In re Petersen)*, 564 B.R. 636, 644 (Bankr. D. Minn. 2017). The fresh start is accomplished through the bankruptcy discharge. The plaintiff has the burden to prove claims under § 523 by a preponderance of the evidence. *Willmar Elec. Serv. Corp. v. Dailey (In re Dailey)*, 592 B.R. 341, 349 (D. Neb. 2018). Exceptions to discharge are "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." *Id.* (citation omitted).

A debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) if the debtor obtained money by false pretenses, a false representation, or actual fraud. Among

3

the elements of false representation, the plaintiff must establish the defendant deliberately made a representation the defendant knew to be false for the purpose of deceiving the creditor. A false pretense involves an "implied misrepresentation or conduct intended to create and foster a false impression." *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999).

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark,* 95 U.S. 704, 709, 24 L. Ed. 586 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

*Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 360 (2016).

The defendant's state of mind or intent is an element to a claim under § 523(a)(2)(A). "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *AGP Grain Coop. v. White (In re White)*, 315 B.R. 741, 748 (Bankr. D. Neb. 2004). "Because direct proof of intent (*i.e.*, the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Northland Nat'l Bank v. Lindsey (In re Lindsey)*, 443 B.R. 808, 815 (B.A.P. 8th Cir. 2011) (citations omitted). The circumstances the plaintiff asserts are the alteration of the written agreement, the representation the plaintiff was required to sign over the title, the failure to consult when the price was lowered, and the discrepancy of $750.96 in the final sale price. These circumstances do not establish the required intent.

The alleged alteration of the agreement was not an alteration. It was the defendant's notes. The agreement was on a carbonless paper form. The defendant gave the plaintiff one of the carbonless copies. The defendant never claimed the notes altered the agreement, either before or during trial. As to the title, the defendant did not represent the plaintiff was *required* to sign over the title. The defendant asked for the title to expedite the sale. This was common practice for his business.

By lowering the asking price The Boat Dock may have breached the consignment agreement. By not maintaining sufficient funds to pay the plaintiff for over nine months, The Boat Dock did breach the consignment agreement. The plaintiff obtained a state court judgment against The Boat Dock, presumably for the breach. The plaintiff also obtained a judgment against the defendant personally. But "[s]imple breach of contract . . . is not included in the limited exceptions to discharge

in bankruptcy." *Groth Servs. v. McDowell (In re McDowell)*, 299 B.R. 552, 555 (Bankr. N.D. Iowa 2003). In this case, for purposes of dischargeability, the required intent was not established. The defendant acted in good faith. He actively marketed the consigned property and was motivated to obtain the highest price. The defendant reasonably believed he was authorized to sell the boat for $5,000. Although the plaintiff did not expressly authorize the second reduction to $5,000, the plaintiff agreed to reduce the price to $5,950. The plaintiff purchased a new boat and expressed he wanted the old boat sold. The Boat Dock paid the plaintiff the proceeds, which were available if the plaintiff had cashed the check within a reasonable time.

Regarding the discrepancy in sale price, the purchase and sale agreement between The Boat Dock and the buyer reflect the boat sold for $5,750.96, not $5,000. The Nebraska Sales and Use Tax Statements also state the higher price. But, as between The Boat Dock and the buyer, and the state taxing authorities, the sale price was $5,750.96. Nebraska taxes the "gross income received for installing and applying tangible personal property if the sale of the property is subject to tax." Neb. Rev. Stat. § 77-2701.16(d). The Boat Dock installed equipment to the boat. The $750 in installation charges was part of the purchaser's price and was taxed as such under Nebraska law. The $750 was not payment on account of the consigned property.

Even if the plaintiff established a claim under § 523(a)(2)(A), $4,000 of the debt would still be discharged. Only the difference could be excepted. A debt is excepted under § 523(a)(2)(A) *to the extent obtained by* false pretenses, a false representation, or actual fraud. If the boat and trailer sold for $5,750.96, the plaintiff would be entitled to payment of $4,600.77. The Boat Dock paid the plaintiff $4,000 in November 2017, when the boat sold. The Bock Dock had sufficient funds in its account at the time the check was written. Of the total amount claimed, $4,000 of the debt was caused or obtained by the plaintiff's inaction and refusal to cash the check.

The plaintiff's inaction was not due to false pretenses, false representation, or actual fraud by the defendant. The plaintiff incorrectly believed if he cashed the check, he was admitting the boat sold for $5,000 or he was waiving some right. But the check does not indicate cashing it constituted a waiver or an accord and satisfaction. Under Nebraska law, a "claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." Neb. U.C.C. § 3-311(b). There is no conspicuous statement on the check or in any written communications. The plaintiff was free to immediately cash the check and sue The Bock Dock and the defendant for breach of contract for the difference.

*Conclusion*

The debt the defendant owes to the plaintiff on account of the confessed judgment for breach of contract is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

Dated: December 22, 2021

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Bankruptcy Judge

Notice given by the court to:
*Galen E. Stehlik
John A. Lentz

Movant (*) is responsible for giving notice to other parties if required by rule or statute.